**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MAXIMINO ROMAN CASTAÑEDA (#Y-29932), | ) ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO. 18 CV 3616 |
| | ) | |
| V. | ) | |
| | ) | HON. MARY M. ROWLAND |
| SHERIFF THOMAS DART, | ) | |
| | ) | |
| DEFENDANT. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

## I.    Introduction

Plaintiff Maximino Roman Castañeda, currently an Illinois state prisoner, brings this *pro se* civil rights action purportedly pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendant Thomas Dart, the Sheriff of Cook County, violated Plaintiff's constitutional rights by denying him access to the courts when he was a pretrial detainee because the jail's divisional law libraries had no books in Spanish. Currently before the Court is Defendant's motion for summary judgment [R. 70]. Plaintiff's motion "to support the demand against Thomas Dart" [R. 81] is granted, but for the reasons discussed in this order, the Court grants Defendant's motion for summary judgment.

## II.    Plaintiff's *Pro Se* Status

Due to Plaintiff's professed language barrier, *pro bono* counsel was recruited to represent him in the early stages of this lawsuit.    *See* R. 4, Order of May 30, 20178 (Pallmeyer, J.).    However, the Court permitted counsel to withdraw based on his

assertion that, after thoroughly investigating the matter, he was unable to litigate Plaintiff's claims consistent with his professional obligations under Fed. R. Civ. P. 11. (R., 10, Order of August 8, 2018 (Pallmeyer, J.). Consequently, Plaintiff has pursued this lawsuit without the assistance of counsel. Having reviewed the summary judgment record, the Court is satisfied that *pro bono* representation would not have altered the outcome of this case.

## III. Legal Standards on a Motion for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249-50 (1986)).

To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of his case on which he bears the burden at trial. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797-98 (7th Cir. 2017) (citing *Celotex*, 477 U.S. at 322-23). "Where the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) (citations omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 334 (7th Cir. 2011) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640-41 (7th Cir. 2008)).

## IV.  Northern District of Illinois Local Rule 56.1

Local Rule 56.1 (N.D. Ill.) governs the procedures for filing and responding to motions for summary judgment in this judicial district. "Under the Local Rules of the Northern District of Illinois, a party filing a motion for summary judgment under Fed. R. Civ. P. 56 must serve and file 'a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008) (citation omitted). The opposing party must then file "'a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.'" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (citing N.D. Ill. R. 56.1(b)(3)(B)); *Fabiyi v. McDonald's Corp.*, No. 11 CV 8085, 2014 WL 985415, at *1 (N.D. Ill. Mar. 13, 2014) (*aff'd* 595 F. App'x 621 (7th Cir. 2014)). The opposing party may also present a separate statement of additional facts that require the denial of summary judgment. *See Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir.

2008).

If a party fails to respond to a L.R. 56.1 statement of uncontested facts, then those facts are deemed admitted to the extent they are supported by the evidence in the record. *Keeton v. Morningstar, Inc.,* 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); L.R. 56.1(b)(3)(C) (N.D. Ill.) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."). A plaintiff's *pro se* status does not excuse him from complying with these rules. *Morrow v. Donahoe*, 564 F. App'x 859, 860 (7th Cir. 2014) (unpublished opinion) (citing *Pearle Vision, Inc. v. Romm,* 541 F.3d 751, 758 (7th Cir. 2008) (inter alia)).

However, a non-movant's failure to respond to a summary judgment motion, or failure to comply with L.R. 56.1, does not automatically result in judgment for the movant. *Keeton,* 667 F.3d at 884; *Love v. Rockford Illinois Mun. Police Dep't*, No. 08 CV 50254, 2013 WL 159246, at *1 (N.D. Ill. Jan. 15, 2013). The movant must still demonstrate that it is entitled to judgment as a matter of law. *Keeton,* 667 F.3d at 884; *Love*, 2013 WL 159246, at *1. And the Court still views all the facts asserted by the moving party in the light most favorable to the non-moving party, drawing all reasonable inferences in the non-movant's favor. *Keeton,* 667 F.3d at 884; *Love*, 2013 WL 159246, at *1.

Consistent with the Local Rules, Defendant filed a Statement of Material Facts along with his motion for summary judgment. (R. 72, Defendant's Local Rule 56.1(a) Statement.) Each substantive assertion of fact in Defendant's Local Rule

56.1(a)(3) Statement is supported by evidentiary material in the record. Also in accordance with the Local Rules, Defendant filed and served on Plaintiff a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. (R. 74, "Defendant's Local Rule 56.2 Notice to *Pro Se* Plaintiff.") The notice warned Plaintiff that a party's failure to controvert the facts as set forth in the moving party's statement results in those facts being deemed admitted. *See also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In addition, pursuant to the Court's directive, the Clerk specifically mailed Plaintiff a copy of Local Rule 56.2. *See* R. 66, Minute Entry of August 13, 2019 (Pallmeyer, J.).

Despite those admonitions, Plaintiff did not file a formal response to Defendant's Statement of Facts or attempt to provide a statement of additional facts. *See* Local Rule 56.1(b)(3). Rather, he largely devotes his relatively cursory motion in support of his claims to attacking the trial court and Public Defender's handling of his state criminal prosecution. Those few facts that Plaintiff does include in his motion lack proper citations to the evidentiary record. *See, e.g., Almy v. Kickert Sch. Bus Line, Inc.*, No. 08 CV 2902, 2013 WL 80367, at *2 (N.D. Ill. Jan. 7, 2013) ("[C]ourts are not required to 'wade through improper denials and legal arguments in search of a genuinely disputed fact'") (citation omitted).

Nevertheless, because Plaintiff is proceeding *pro se*, the Court has interpreted his response generously and has construed the additional facts as favorably as the record and Local Rule 56.1 permit. *See Thomas v. Williams*, 822 F.3d 378, 385 (7th

Cir. 2016). The Court has also taken into account Plaintiff's unsupported factual assertions to the extent that he could properly testify about the factual matters asserted. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Sistrunk v. Khan*, 931 F. Supp. 2d 849, 854 (N.D. Ill. 2013); Fed. R. Evid. 602, 701, 702. In addition, the Court has considered Plaintiff's documents captioned "More Evidence" (R. 84, 85) even though he did not seek the Court's leave to file a surreply.

That said, the parties' respective versions of the events underlying this action diverge only slightly. The Court notes the single discrepancy below, and has otherwise incorporated Plaintiff's additional facts into this opinion. The Court finds that the following facts, all supported by the record, are undisputed for purposes of the summary judgment motion:

## V. Background

### A. Uncontested Facts

Plaintiff Maximino Roman Castañeda, currently an Illinois state prisoner, was a pretrial detainee at the Cook County Jail at all times relevant to this action. (R. 72, Defendant's Local Rule 56.1(a) Statement of Material Facts, ¶¶ 1, 2.) Defendant Thomas Dart is the Sheriff of Cook County. (*Id.*, ¶ 3.)

Plaintiff was born in Mexico. (*Id.*, ¶ 4.) He completed a high school education in Mexico. (*Id.*, ¶ 13.)

In February 2013, Plaintiff was booked into the Cook County Jail pending disposition of state criminal proceedings, (*Id.*, ¶¶ 7, 8.) Plaintiff spent time in housing divisions 1, 9, 10, and 11, while incarcerated at the jail. (*Id.*, ¶ 9.)

The trial court originally assigned Assistant Public Defender Monica Mapp (who is not a Defendant in this action) to represent Plaintiff in his criminal case. (*Id.*, ¶ 10.) In August 2015, Plaintiff advised the trial court that he wanted a different public defender because he did not believe that Ms. Mapp was providing effective representation. (*Id.*, ¶ 11.) Plaintiff and his attorney apparently disagreed over trial strategy—specifically, whether and how best to seek suppression of his confession to police. (R. 81, Plaintiff's Motion in Opposition to Summary Judgment, at p. 1.) The trial court denied Plaintiff's request for a new attorney. (Deft's SOF, ¶ 11.)

In September 2015, Plaintiff once again requested new counsel. (*Id.*, ¶ 12.) The court denied Plaintiff's renewed request for another lawyer, admonishing him that he was not entitled to a public defender of his choosing. (*Id.*) The court also assured Plaintiff that Ms. Mapp was well-qualified to represent his interests. (*Id.*) The court did, however, grant Plaintiff's alternate request to represent himself. (*Id.*, ¶ 14.) Accordingly, the trial court allowed Plaintiff's public defender to withdraw from the case. (*Id.*, ¶ 15.)

At a hearing in December 2015, the court offered to appoint Plaintiff another public defender because Ms. Mapp had been promoted to a new position within the Public Defender's Office. (*Id.*, ¶ 16.) Plaintiff accepted the assignment of new counsel. (*Id.*, ¶ 17.) Therefore, the court re-appointed the Public Defender's Office. (*Id.*, ¶ 19.) Plaintiff also spoke to a supervisor in the Public Defender's Office that day.

(*Id.*, ¶ 18.) Plaintiff's new, court-appointed attorney (non-Defendant Deirdre McGuire) entered an appearance on Plaintiff's behalf in January 2016. (*Id.*, ¶ 20.)

In August 2016, Plaintiff asked for new counsel again, explaining that he was having a disagreement with Ms. McGuire, and that he was dissatisfied with her performance. (*Id.*, ¶ 21.) The trial court gave Plaintiff the option of keeping his Public Defender or representing himself. (R. 81, at p. 2.)

The trial court acknowledged that Plaintiff had a right to represent himself, but discouraged him from doing so. (*Id.*, ¶ 22.) The trial court reiterated that it could not choose a new attorney for Plaintiff, reminded him that the stakes were high because he was facing up to life in prison, summarized the perils of proceeding without counsel, and noted that Ms. McGuire had over 30 years' experience. (*Id.*; *see also* R. 81, at p. 2.) After considering the consequences, Plaintiff elected to represent himself anyway. (Deft's SOF, ¶ 23.) The court permitted Ms. McGuire to withdraw from the case. (*Id.*, ¶ 24.)

In July 2017, the court re-appointed the Public Defender's Office to represent Plaintiff in his criminal case. (*Id.*, ¶ 25.) Ms. McGuire began appearing on Plaintiff's behalf again. (*Id.*, ¶ 26.) The criminal case went to trial in May 2018. (Deft's SOF, ¶ 27.) McGuire and another public defender represented Plaintiff. (*Id.*) A jury found Plaintiff guilty of predatory criminal sexual assault. (*Id.*, ¶ 28.) The trial court imposed an 80-year sentence. (*Id.*, ¶ 29.)[1]

---

[1] In August 2018, Plaintiff again moved for new counsel based on purportedly ineffective assistance, an alleged conflict of interest, and "bad communication." The court denied the motion. (R. 81, at p. 2.)

The Cook County Jail has four law libraries. (*Id.*, ¶ 30.) There are law libraries in Divisions 6, 9, 10, and 11. (*Id.*) Each library services the housing division in which it is located. (*Id.*, ¶ 31.)

Law librarians physically staff each housing unit. (*Id.*) Law librarians employed by the Cook County Department of Corrections ("CCDOC") are trained in performing legal research. (*Id.*, ¶ 32.) Law librarians' duties include scheduling inmates for visits to the law library, providing inmates with pens, paper, and envelopes, assisting them with legal research, and processing their requests for copies of legal materials. (*Id.*) For those inmates confined in housing divisions that do not have a physical law library, the law librarian provides access by a "request and delivery" system. (*Id.*, ¶ 31.)

The CCDOC has established procedures for requesting access to the law library's resources. (*Id.*, ¶ 33.) An inmate who wishes to visit a law library, or to obtain a copy of a particular case or statute, submits a form called a "Law Library Request Slip" to a correctional officer or social worker. (*Id.*, ¶ 34.) The jail employee then delivers that form to the law librarian who is assigned to the housing unit of the inmate who made the request. (*Id.*, ¶ 35.)

Upon receipt of the request sip, the law librarian either issues an "access pass" and schedules the inmate to attend the law library, or provides the inmate with a copy or copies of the requested case(s) and/or statute(s). (*Id.*, ¶ 35.)

The system for enlisting the assistance of the law library was available to Plaintiff at all times during the period he was incarcerated at the Cook County Jail. (*Id.*, ¶ 33.)

The CCDOC maintains hard copies of a number of commercially available state, regional, and federal law reporter volumes in English to assist inmates with their legal research. (*Id.*, ¶ 37.) The CCDOC also subscribes to the LexisNexis electronic legal research database. (*Id.*)

Maretta Lake is the CCDOC's Deputy Director of Inmate Services. (R. 72-13, Affidavit of Maretta Lake, ¶ 1.) According to Lake, the CCDOC is unaware of any law reporters in any language other than English that are commercially available at the present time. (Defendant's SOF, ¶ 38.)

### B. Contested Facts

Defendant asserts that jail law librarians translate legal research into other languages, including Spanish, as needed upon request from inmates. (*Id.*, ¶ 39.) Lake states in her affidavit that when a law librarian does not speak the language in question, he or she obtains the materials from LexisNexis, and then uses the online platform Google Translate to convert the text into the language called for. (*Id.*)

Lake goes on to say that if an inmate submits a law library request that is written in English, the law librarian automatically fulfills the request in English. (*Id.*, ¶ 40.) Lake further declares that if an inmate's request is written in Spanish, then the inmate will automatically receive the requested materials in Spanish. (*Id.*)

Plaintiff insists that Defendant's representations in this regard are a "big lie." (R. 81, at p. 3.) Plaintiff contends that "the person who was in charge [] used to tell us that she was not able to translate the legal papers in Spanish…." (*Id.*)

## VI. Analysis

No outcome-dispositive facts are in dispute, and Defendant has established that he is entitled to judgment as a matter of law. Even viewing the record in the light most favorable to Plaintiff, the Court is satisfied that no reasonable trier of fact could conclude that Defendant deprived him of meaningful access to the courts.

It is well-settled that prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 824, (1977); *Wilson v. Gaetz*, 700 F. App'x 540, 542 (7th Cir. 2017) (unpublished opinion); *Thurman v. Unknown Cook Cty. Sheriff Employees*, No. 18 CV 2720, 2018

WL 5315208, at *8 (N.D. Ill. Oct. 26, 2018). This right requires that prison officials give inmates the tools they need to attack their sentences and to challenge the conditions of their confinement. *Wilson*, 700 F. App'x at 542 (citing *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009); *Snyder v. Nolen*, 380 F.3d 279, 290 (7th Cir. 2004)). The right of access to the courts also protects "the right to file other civil actions in court that have a reasonable basis in law or fact." *Wilson*, 700 F. App'x at 542 (citing *Snyder*, 380 F.3d at 290). A person's right to access the courts must be "adequate, effective, and meaningful." *Harer v. Flores*, No. 18 CV 6822, 2019 WL 3231385, at *2 (N.D. Ill. July 18, 2019) (non-prisoner case concerning an alleged cover-up to prevent a court action) (quoting *Bounds*, 430 U.S. at 822).

State actors violate an individual's right to court access when they "hinder[ ] ... efforts to pursue a nonfrivolous legal claim," causing an "actual concrete injury." *Harer*, 2019 WL 3231385, at *2 (quoting *May v. Sheahan*, 226 F.3d 876, 883 (7th Cir. 2000)). To prevail on an access-to-courts claim, a prisoner must show that the defendant rendered him or her unable to pursue a legitimate claim. *Morris v. Dickman*, No. 17-3074, 2019 WL 5691816, at *2 (7th Cir. Nov. 4, 2019) (unpublished opinion) (citing *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (plaintiff must explain the connection between the denial of access to legal materials or assistance, and his inability to pursue a legitimate claim); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)). In the case at bar, Plaintiff has not demonstrated either that Defendant denied him meaningful access to the courts, or that he suffered prejudice to any pending or contemplated case.

## A. Plaintiff May Not Challenge the Propriety of His Conviction or Sentence in the Context of This Civil Rights Action

The Court must first emphasize that it cannot consider the numerous arguments Plaintiff makes in his summary judgment motion contesting state trial court rulings, the validity of his conviction, the appropriateness of his 80-year sentence, or what he perceives to be a generally "corrupt … legal system." (R. 81, at p. 4.) Civil rights actions are not the appropriate avenue for challenging a state criminal conviction. Federal courts generally have no power to review state court orders, and they are precluded from exercising appellate jurisdiction over state court decisions. *See District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 483 (1983) (holding that federal district courts may not exercise appellate jurisdiction over state court decisions); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923); *see also Sykes v. Cook Cty. Circuit Court Prob. Div.,* 837 F.3d 736, 741 (7th Cir. 2016) ("Lower federal courts are not vested with appellate authority over state courts").

Insofar as Plaintiff seeks examination of his criminal conviction, his only avenue for relief in federal court is by way of a petition for a writ of habeas corpus. With the important exception of habeas corpus, "there is no basis upon which a federal district court can sit as an appellate court to review the proceedings of a state court." *Irvan v. Cooper*, No. 16 CV 4881, 2017 WL 449179, at *3 (N.D. Ill. Feb. 2, 2017) (citing *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014) ("most substantive decisions [in state criminal proceedings] are governed by state law and cannot be reviewed in federal court") (citations omitted)).

Indeed, Plaintiff cannot, consistent with his conviction, assert any claim that casts doubt on the validity of that conviction. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994); *see also Viramontes v. City of Chi.*, 840 F.3d 423, 426 (7th Cir. 2016); *Garrett v. Needleman*, No. 16 CV 1062, 2017 WL 2973481, at *4 (N.D. Ill. July 12, 2017) (same). Until the sentence has been invalidated, the cause of action for damages simply "does not accrue." *Heck*, 512 U.S. at 490.

"It is irrelevant [whether a prisoner plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Viramontes*, 840 F.3d at 428 (quoting *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)); *see also Garrett*, 2017 WL 2973481, at *4 (same). "If the injury in question is losing the underlying case, then *Heck* … comes into play." *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998).

Thus, if Plaintiff thinks that the trial court should have granted his motion to suppress certain inculpatory statements due to *Miranda* and Vienna Convention violations, that his defense attorneys provided constitutionally inadequate representation, that his 80-year sentence for predatory criminal sexual assault is disproportionate to the severity of the offense and harsher than if he had committed

a double murder—or if he has any other constitutional challenges to his conviction or sentence—then he may raise those claims on appeal, or in a federal habeas corpus action (assuming he can meet the requirements set forth in 28 U.S.C. § 2254). But the Court cannot entertain those challenges in the context of this First Amendment civil rights action under 42 U.S.C. § 1983.

### B. Plaintiff's Representation by Counsel Satisfied His Right of Access to the Courts

Plaintiff cannot claim a denial of access to the courts with respect to his state criminal case. As the Court previously advised Plaintiff, "an inmate's right of access to the courts is generally satisfied if he is represented by counsel." (R. 4, Order of May 30, 2018, at pgs. 2-3 (Pallmeyer, J.) (citing *Walters v. Edgar*, 163 F.3d 430, 436 (7th Cir. 1998); *Martin v. Tyson*, 845 F.2d 1451, 1456 (7th Cir. 1988); *Tasby v. Heimlick*, No. 10 CV 0419, 2013 WL 620560, at *7 (N.D. Ind. Feb. 19, 2013) (collecting cases)); *see also United States v. Sykes,* 614 F.3d 303, 311 (7th Cir. 2010) (same); *Williams v. Lewellyn*, No. 15 CV 2254, 2015 WL 6689643, at *1 (C.D. Ill. Nov. 2, 2015) (same).

It should also be noted that a criminal defendant who is represented by counsel does not have the right to file his own, *pro se* submissions. (R. 4, at p. 3); *see also Metlock v. Pfister*, No. 15 CV 6157, 2016 WL 1746164, at *5 (N.D. Ill. May 3, 2016) (recognizing Illinois' "state procedural rule against hybrid representation (*i.e.*, filing *pro se* documents while represented by counsel)"). Because the Cook County Public Defender represented Plaintiff in his criminal case, he cannot claim a denial of access to the courts to the extent he is suing in connection with that case.

The fact that Plaintiff elected to represent himself at certain points during the criminal proceedings does not alter the Court's analysis. "We have long interpreted *Bounds* to give the government the choice to provide *either* access to a law library *or* access to counsel or other appropriate legal assistance." *Sykes,* 614 F.3d at 311 (emphasis added) (collecting cases). "We have further held that a defendant who declines appointed counsel and instead invokes his constitutional right to self-representation … does not have a right to access to a law library." *Id.* (citations omitted). "The rule is that [the defendant] has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up." *Id.* (quoting *United States v. Byrd*, 208 F.3d 592, 593 (7th Cir. 2000)). "[C]aselaw squarely forecloses" any claim that a criminal defendant who chooses to proceed *pro se* has a right to a law library. *Sykes,* 614 F.3d at 311; *see also Kane v. Garcia-Espitia*, 546 U.S. 9, 10 (2005) (finding that a defendant who elected to proceed *pro se* on state court charges did not have a viable habeas corpus claim on the basis that he was denied access to a law library during pretrial confinement).

The trial court on multiple occasions assigned the Cook County Public Defender to represent Plaintiff. The State therefore discharged its constitutional obligation to provide him with competent legal assistance. Where, as here, a person is offered appointed counsel but chooses instead to represent himself, he does not have a right to access to a law library. Plaintiff has failed to demonstrate that there

is a question for a jury with regard to whether the criminal proceedings in any way denied him access to the courts.

### C. There Is No Triable Issue as to Whether Spanish-Language Treatises Exist.

Although Plaintiff challenges the dearth of legal materials in Spanish in the jail's law libraries, he has not shown that Defendant could actually obtain Spanish-language legal reporters. Correctional officials cannot reasonably be mandated to offer legal treatises that do not exist. *See, e.g., Williams v. Schueler*, No. 04 CV 0065, 2006 WL 1728123, at *2 (E.D. Wis. June 23, 2006) (ruling, in a discovery dispute in prisoner's excessive force case, that defendants could not "be expected to produce documents which do not exist"); *Crane v. Rodriguez*, No. 15 CV 0208, 2017 WL 4679815, at *3 (E.D. Cal. Oct. 18, 2017) (observing, in exhaustion-related discovery dispute, "this court cannot order a defendant to produce documents that do not exist or are not in the defendant's possession or control"); *Boyd v. Etchebehere*, No. 13 CV 1966, 2016 WL 829167, at *5 (E.D. Cal. Mar. 3, 2016) ("Although Plaintiff may be dissatisfied with Defendant's response [to a discovery request], Defendant cannot be compelled to produce documents that simply do not exist"); *Washington v. Essex*, No. 12 CV 3054, 2015 WL 814527, at *2 (E.D. Cal. Feb. 25, 2015) (same) (collecting cases).

In the case currently before the Court, Maretta Lake, the CCDOC's Deputy Director of Inmate Services, has submitted an affidavit stating that law reporters are commercially available only in English. Plaintiff has adduced no evidence suggesting that the CCDOC could, in fact, obtain Spanish-language law reporters.

He merely poses the rhetorical question, "How i[s] i[t] possible that they don't have a single law book in Spanish…?"   (R. 81, at p. 3.)   Because there is no issue of fact as to whether Spanish-language legal materials exist in printed form, Defendant is entitled to judgment as a matter of law on this point.

### D.   Plaintiff Has Made No Showing of Prejudice to a Pending or Contemplated Civil or Criminal Case

Plaintiff has not met his burden of showing that any deficiencies in the jail law library's resources harmed him in any way.   An inmate claiming a denial of access to the courts cannot survive summary judgment unless he puts forth evidence that he has been injured—in other words, that he suffered actual prejudice to one of his cases.   *Gonzalez v. Josephson*, No. 14 CV 4366, 2019 WL 1013737, at *18 (N.D. Ill. Mar. 4, 2019) (citing *Lewis*, 518 U.S. at 349 ("The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing….").

There exists no "abstract, freestanding right to a law library or legal assistance."   *Lewis*, 518 U.S. at 351; *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012) (same); *Henyard v. Butler*, No. 15 CV 2324, 2016 WL 5171783, at *7 (N.D. Ill. Sept. 21, 2016) (same) (habeas case).   "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense."   *Lewis*, 518 U.S. at 351; *Snyder*, 380 F.3d at 301 (same) (quoting *Lewis*); *Gonzalez*, 2019 WL 1013737, at *18 (same).   "That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary."   *Lewis*, 518 U.S. at 351.

Instead, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions." *Ortiz*, 561 F.3d at 671 (quoting *Marshall v. Knight,* 445 F.3d 965, 968 (7th Cir. 2006); *see also Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987) (to survive a motion for summary judgment, a plaintiff must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation.").

Without some showing of prejudice, Plaintiff's claim cannot survive summary judgment. *See, e.g., Owens v. Evans*, 878 F.3d 559, 564-65 (7th Cir. 2017) ("[Plaintiff's] claims about his lack of adequate access to prison libraries were properly rejected on summary judgment because they were not accompanied by any showing of actual prejudice in a lawsuit")); *Thurman*, 2018 WL 5315208, at *8 (an inmate's right of access to the courts "is violated when a prisoner is deprived of such access and suffers actual injury as a result") (citing *Ortiz*, 561 F.3d at 671); *Morris*, *supra*, 2019 WL 5691816, at *3 (irrespective of whether the appellate court considered inmate submissions that the clerk of court had allegedly misdocketed, those purported errors "did not harm [plaintiff]'s ability to litigate meritorious claims") (citing *Eichwedel v. Chandler*, 696 F.3d 660, 673 (7th Cir. 2012) (access-to-court claim failed where prisoner did not identify "any nonfrivolous, arguable underlying claim" he was prevented from bringing) (internal quotation marks omitted)).

The mere fact that Plaintiff was convicted is not evidence of prejudice. *See Hertel v. Miller-Lewis*, 695 F. App'x 957, 961 (7th Cir. 2017) (unpublished) ("Speculative prejudice is not enough for an 'actual injury'"); *Jones v. James*, 38 F.3d 943, 945 (8th Cir. 1994) ("vague, wishful, and speculative testimony" that an attorney might have taken prisoner's case if the state paid his postage to contact legal organizations did not amount to prejudice). The record offers no basis to suppose that the criminal prosecution would have had a different outcome had Plaintiff been afforded access to Spanish language legal materials.

In fact, as discussed more fully in preceding paragraphs, *Heck* precludes Plaintiff from citing his criminal conviction as the injury he suffered. In *Hoard v. Reddy,* 175 F.3d 531 (7th Cir. 1999), an inmate brought an action for damages claiming that prison officials had prevented him from mounting a state-court collateral attack on his conviction. The U.S. Court of Appeals for the Seventh Circuit held that "only prospective relief [and not damages] is available in a prisoner's suit complaining of denial of access to the courts unless he has succeeded in getting his conviction annulled, since otherwise an effort to obtain damages would be blocked by *Heck*." *Id.* at 533.

Likewise, in *Burd v. Sessler*, 702 F.3d 429 (7th Cir. 2012), a prisoner brought a Section 1983 action against prison officials, alleging that they had deprived him of access to the courts by preventing him from using library resources to prepare a motion to withdraw his guilty plea. The Court of Appeals held that *Heck* forbade the maintenance of such a damages action until the plaintiff could demonstrate his

injury by establishing the invalidity of the underlying judgment. *Id.* at 433-35. In the case at bar, a finding that Plaintiff would have been acquitted with the help of Spanish-language treatises necessarily calls into question the legitimacy of his conviction.

And of course, Plaintiff cannot obtain prospective relief since he is no longer in Defendant's custody. Any request for injunctive relief at the jail would now be moot. *See Preiser v. Newkirk,* 422 U.S. 395, 401-04 (1975); *Ortiz*, 561 F.3d at 668; *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); *Young v. Lane*, 922 F.2d 370, 373 (7th Cir. 1991). Plaintiff, who is serving an 80-year prison sentence, does not suggest that he faces any likelihood of returning to the Cook County Jail.

Moreover, Plaintiff has pointed to no other civil or criminal action (or potential lawsuit) aside from his criminal case that was in any way prejudiced by the lack of Spanish-language materials. To the contrary, an inmate's ability to file multiple lawsuits "suggest[s] the paradox that ability to litigate a denial of access claim is evidence that the plaintiff has no denial of access claim!" *Walters*, 163 F.3d at 436 (affirming that inmates in segregation who had to rely on "runner" system but managed to file 13 lawsuits lacked standing to bring a court-access claim because they could not show prejudice to a nonfrivolous case); *Ayoubi v. Dart*, No. 14 CV 0050, 2014 WL 12660535, at *1 (N.D. Ill. May 8, 2014), *aff'd,* 640 F. App'x 524 (7th Cir. 2016) (similar); *see also Smith v. Pachmayr*, 776 F. App'x 362, 364 (7th Cir. 2019) (unpublished opinion) (in case where prisoner claimed that state officials conspired to deny him equal protection and access to the courts by preventing him from filing a

timely petition for a writ of *certiorari*, the record demonstrated that the plaintiff "had continuing access to the courts, precluding any liability for the defendants" (citation omitted).

Plaintiff was able, at the very least, to initiate three lawsuits in this district alone while incarcerated at the Cook County Jail. *See Castañeda v. Cook County Department of Corrections*, Case No. 18 CV 3894 (N.D. Ill.); *Castañeda v. Cook County Department of Corrections*, Case No. 18 CV 5894 (N.D. Ill.). The court administratively closed Case No. 19 CV 3984 as duplicative. R. 5, Order of June 6, 2018 (Pallmeyer, J.). The court dismissed Case No. 19 CV 5894 in view of Plaintiff's failure to submit an amended complaint, as directed. R. 5, Order of October 17, 2018 (Pallmeyer, J.). Plaintiff has shown neither that those lawsuits stated cognizable federal claims, nor that the alleged lack of Spanish-language books influenced their dismissal. Moreover, he does not suggest that there were any additional lawsuits that he might have brought, but could not. Plaintiff has not made a showing of prejudice.

### E. A Jury Does Not Have to Decide Whether the CCDOC Provided Access to Legal Materials Translated into Spanish

A trier of fact need not resolve the parties' dispute over whether the Cook County Jail offered Spanish-language translation of legal materials. The Court recognizes that, under *Bounds,* the "fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828. That right

encompasses "the right to receive, at state expense, materials necessary to draft legal documents as well as the stamps to mail them." *Widmer v. Bramlet*, No. 14 CV 0088, 2014 WL 1242735, at *6 (S.D. Ill. Mar. 26, 2014) (citations omitted). At least one court has deemed the availability of LexisNexis software an adequate substitute for a fully stocked law library. *Gonzalez*, 2019 WL 1013737, at *18.

The CCDOC's Director of Inmate Services has submitted an affidavit attesting that the law libraries do translate legal materials for inmates, but Plaintiff calls that representation a "big lie." (R. 81, at p. 3.) If that question were outcome-dispositive, then a jury might have to resolve the parties' dispute.

However, the Court has no occasion to reach that question because its resolution does not affect Defendant's entitlement to summary judgment. A court may grant summary judgment if facts are in dispute, so long as those facts are not outcome determinative. *See, e.g., Montgomery v. Am. Airlines, Inc.,* 626 F.3d 382, 389 (7th Cir. 2010); *Gurley v. Johnson*, No. 14 CV 1009, 2015 WL 4148668, at *3, n.1 (N.D. Ill. July 8, 2015) (same) (parties' dispute over whether police officers helped plaintiff him find his parked car or he found it himself was non-material fact in case involving an allegedly illegal search and seizure).

In the instant case, a jury need not decide whether the jail law library offered requested translations. It is enough to note that Plaintiff's legal representation satisfied his right of access to the courts with respect to his criminal case—the only legal matter he discusses in his summary judgment materials—and that he has not provided any evidence that the alleged denial of the law library's resources caused

any detriment either to that criminal case, or to any other meritorious case. Because Plaintiff cannot pass either of those two hurdles, the issue of translation is immaterial. By the same token, because Plaintiff cannot establish that he has a viable court access claim, the Court need not determine whether Defendant is entitled to qualified immunity.

Finally, Plaintiff's complaints about access to Spanish-language materials at the Stateville Center are not a proper subject of inquiry under this case number. Prisoners, like other litigants, must comply with the federal rules for joining claims and defendants into a single lawsuit. *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017) (citing Fed. R. Civ. P. 18, 20); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits…."). A plaintiff "cannot use a single complaint to bring unrelated claims against different defendants." *Owens*, 878 F.3d at 566.

The case currently before the Court relates to Plaintiff's access to the courts while he was incarcerated at the Cook County Jail. Although he raises similar concerns about Stateville's law library, where he is currently confined, claims against the county jail and a state facility are not related in the legal sense. Consequently, Plaintiff cannot (particularly at the summary judgment stage of these proceedings), assert new claims against non-Defendant Stateville officials. I

## VII. Conclusion

For all of the foregoing reasons, the Court grants Plaintiff's motion to support his claims [R. 81], but nevertheless grants Defendant's motion for summary

24

judgment [R. 70]. There is no genuine dispute as to any outcome-dipositive facts, and Defendant has established that he is entitled to judgment as a matter of law.

Plaintiff cannot employ this First Amendment case against the Cook County Sheriff to dispute the validity of his criminal conviction. And whether or not Cook County Jail did and does make legal materials available to detainees in Spanish is irrelevant to Plaintiff's court access claim because he cannot show prejudice to a legitimate pending or contemplated lawsuit. The record shows that Plaintiff was represented by counsel (or given the option of representation) in the state criminal proceedings, thereby satisfying his constitutional rights with regard to those proceedings. He has failed to meet his burden of showing that there is any triable jury question for a jury as to whether he had meaningful access to the courts while a pretrial detainee.

The Court directs the Clerk to enter final judgment in favor of Defendant pursuant to Fed. R. Civ. P. 56. Civil case closed. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998); *Bentz v. Palmer*, No. 12 CV 1753, 2015 WL 1042932, at *5 (N.D. Ill. Mar. 5, 2015). If the appeal is found to be non-meritorious, Plaintiff could be assessed another "strike" under 28 U.S.C. § 1915(g). If a prisoner accumulates three "strikes" because three federal cases or appeals have been dismissed as frivolous or malicious, or for failure to state a claim,

the prisoner may not file suit in federal court without pre-paying the filing fee unless he or she is in imminent danger of serious physical injury. *Id.* If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, then he must file a motion for leave to proceed *in forma pauperis* in this Court. *See* Fed. R. App. P. 24(a)(1).

Plaintiff need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Plaintiff wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv).

Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

E N T E R:

Dated: December 9, 2019

MARY M. ROWLAND
United States District Judge